UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
SONYA GORBEA,

               Plaintiff,

    -against-

VERIZON NEW YORK, INC.,

              Defendant.
------------------------------------------------------------

**MEMORANDUM & ORDER**
**18-CV-420 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Sonya Gorbea brings this action against Defendant Verizon New York, Inc. ("Verizon") stemming from the termination of her employment in December 2016. Specifically, Plaintiff asserts disability discrimination and failure to accommodate claims under the Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. § 12101 *et seq.*, the New York State Human Rights Law ("NYSHRL"), codified at N.Y. State Exec. Law § 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), codified at N.Y.C. Admin. Code § 8-101 *et seq.* (*See* Am. Compl. (Dkt. 16) ¶¶ 46-75.) Now before the court is Verizon's motion for summary judgment. (Def.'s Mot. for Summ. J. ("Mot.") (Dkt. 28); Mem. in Supp. of Def.'s Mot. for Summ. J ("Mem.") (Dkt. 30); Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. ("Opp.") (Dkt. 32); Def.'s Reply in Supp. of Mot. for Summ. J. ("Reply") (Dkt. 33).) For the following reasons, Defendant's motion for summary judgment is GRANTED with prejudice.

1

I. BACKGROUND[1]

A. Facts

In 1997, Verizon hired Plaintiff as a Field Technician, a job that required heavy lifting and the ability to climb poles and ladders to repair telephone service for Verizon customers. (Def.'s R. 56.1 Stmt. ("Def. 56.1") (Dkt. 29) ¶ 4.) Plaintiff injured her back in 2001 and has suffered from asthma since 2007. (Tr. of Mar. 28, 2019 Dep. of Pl. ("Pl. Tr.") (Dkt. 31-2) at 17:7-16.) Between 2005 and 2010, Plaintiff requested, and Verizon provided to Plaintiff, accommodations that relieved Plaintiff of the responsibility to climb poles, lift ladders, or carry anything heavier than 25 pounds. (*Id.* at 17:17-24.) However, in 2011, Plaintiff filed a complaint against Verizon, alleging that Verizon had failed to provide her with sufficient accommodations. (Def. 56.1 ¶ 7.) The

---

[1] On a motion for summary judgment, the court generally draws its statement of facts from the parties' Rule 56.1 statements and the admissible evidence submitted therewith. In this case, however, Plaintiff has not filed a Rule 56.1 counterstatement. Under the court's local rules, if the party opposing a motion for summary judgment "fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003); *see also Luizzi v. Pro Transport Inc.*, No. 02-cv-5388 (CLP), 2009 WL 252076, at *2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to a submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted. . . .") The court therefore deems the facts set forth in Defendant's 56.1 statement admitted. The court notes, however, that Plaintiff's failure to comply with the local rules "does not absolve [Defendant] of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001). Accordingly, the court construes the evidence in the light most favorable to Plaintiff and draws all reasonable inferences in her favor. *See ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

parties settled the lawsuit in 2014; Plaintiff received a sum of money and the opportunity to return to work for Verizon in Manhattan as a full-time Field Technician with permanent reasonable accommodations. (*Id.* ¶ 8.) Plaintiff testified she was "ecstatic" about the lawsuit's resolution and the "opportunity to go back out into the field and be able to work." (Pl. Tr. at 19:17-23.)

In October 2014, within two weeks of returning to work, Plaintiff went on disability leave for approximately one year after sustaining an injury to her ankle that required surgery. (Def. 56.1 ¶ 11.) Plaintiff returned to work in September or October of 2015, but shortly thereafter she went on disability leave again for approximately one month. (*Id.* ¶ 12.) In April 2016, Plaintiff complained of pain "[t]hroughout [her] whole entire body," and submitted a request for disability leave; the request was denied, as was Plaintiff's subsequent appeal of the denial. (Pl. Tr. at 24:5-25:6.) Verizon asserts that Plaintiff's request at this time was denied because "it was made during a union strike." (Def. 56.1 ¶ 13.)

In August 2016, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge stemming from an incident that took place on July 9, 2016. (*Id.* ¶ 17.) The incident involved an argument between Plaintiff and her manager about overtime work. (*Id.* ¶ 14.) During the course of the argument, Plaintiff told her manager she was not feeling well, and management responded by calling an ambulance. (*Id.* ¶ 15.) Once the ambulance arrived, Plaintiff got into a further argument with the EMT; Plaintiff admits she walked out of the ambulance before it left Verizon's premises, got into her personal car, and drove away. (*Id.* ¶ 16.) Plaintiff ultimately received a right to sue letter from the EEOC but never filed suit. She did, however, file workers' compensation claims, which were denied. (*Id.*)

The last day Plaintiff reported to work at Verizon was August 8, 2016. (*Id.* ¶ 18.) Subsequently, Plaintiff applied for short-term disability benefits, but her request was denied by MetLife, the

third-party administrator of Verizon's short-term disability plan. (*Id.*) Plaintiff unsuccessfully appealed the denial. (Pl. Tr. at 58:17-24.) Plaintiff testified that from August 9, 2016 until December 29, 2016, the date her employment was terminated by Verizon, her doctors advised her against returning to work in any capacity, with or without accommodation, due to her depression and post-traumatic stress disorder.[2] (Def. 56.1 ¶ 33.) Plaintiff further testified that her doctors advised her not to return to work in any capacity, with or without accommodation, for all of 2017 and 2018. (*Id.* ¶ 33.) Plaintiff does not allege that she requested an accommodation from Verizon between August 9, 2016 and December 29, 2016. (*Id.* ¶ 38.)

On August 24, 2016, Verizon sent Plaintiff a letter advising her that her short-term disability claim had been denied, she was absent from work without authorization, she was required to return to work or would risk termination, and she should advise Verizon if she needed an accommodation to return to work. (Aug. 24, 2016 Letter (Dkt. 31-6) at ECF 2.) Verizon sent follow-up letters to Plaintiff on September 7, 2016, December 1, 2016, and December 22, 2016 with the same information. (*See* Sept. 7, 2016 Letter (Dkt. 31-7) at ECF 2; Dec. 1, 2016 Letter (Dkt. 31-8) at ECF 2; Dec. 16, 2016 Letter (Dkt. 31-10) at ECF 2.) Plaintiff acknowledges that while she received the letters, she did not respond to the correspondence, return to work, or request an accommodation from Verizon. (Def. 56.1 ¶ 28.) On December 29, 2016, Verizon sent a letter to Plaintiff informing her that she was being terminated from her position. (Dec. 29, 2016 Letter (Dkt. 31-11) at ECF 2.)

---

[2] Plaintiff's amended complaint asserts that she suffers from asthma, chronic back pain, post-traumatic stress disorder, depression, and anxiety. (Am. Compl. ¶ 10.) As noted *infra*, Plaintiff does not provide any medical documentation or other evidentiary support for these assertions, other than her own deposition testimony.

### B. Procedural History

On March 17, 2017, Plaintiff filed a charge of disability discrimination with the EEOC stemming from her December 29, 2016 termination.[3] (Def. 56.1 ¶ 36.) The EEOC issued Plaintiff a Notice of Right to Sue Letter, and Plaintiff commenced this action on January 22, 2018. (*See* Compl. (Dkt. 1).) Plaintiff amended her complaint on April 20, 2018 (*see* Am. Compl.), and asserts that Verizon fired Plaintiff because of her disability and failed to provide Plaintiff with a reasonable accommodation in violation of the ADA, the NYSHRL, and the NYCHRL (*see id.* ¶¶ 46-75). Verizon filed a fully briefed motion for summary judgment on November 21, 2019. (Mot.)

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986)).

---

[3] The April and July 2016 incidents described above were not included in the EEOC charge.

"To determine whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" *Mikhaylov v. Y & B Trans. Co.*, No. 15-cv-7109 (DLI), 2019 WL 1492907, at *3 (E.D.N.Y. Mar. 31, 2019).[4] While the court must draw all inferences in favor of the non-movant, the non-movant "may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Finally, in considering Defendant's motion, the court is mindful that the Second Circuit "has long recognized 'the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent.'" *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)). Nevertheless, "[t]hough caution must be exercised in granting summary judgment where intent is genuinely in issue, summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994).

## III. DISCUSSION

### A. ADA Discrimination and Failure to Accommodate

Claims of discrimination under the ADA are evaluated under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013).

---

[4] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

Under the *McDonnell Douglas* framework, Plaintiff bears the initial burden of establishing a prima facie case of discrimination. Plaintiff's discharge of this burden creates a rebuttable presumption that Defendant's actions were motivated by discriminatory animus, and the burden shifts to Defendant to demonstrate a legitimate non-discriminatory reason for its actions. *See, e.g.*, *Benzinger v. Lukoil Pan Am., LLC*, __F. Supp. 3d__, 2020 WL 1322478, at *10 (S.D.N.Y. 2020). If Defendant discharges its burden, the presumption of discriminatory animus fades away and the burden shifts back to Plaintiff to establish that the proffered reason is pretextual. *See King v. Block Inst., Inc.*, No. 17-cv-7318 (NGG), 2020 WL 2523245, at *6 (E.D.N.Y. May 18, 2020). Proof of pretext does not require proof that the Defendant's proffered reason was false or immaterial to the employment decision; it is sufficient to show that the decision was at least partially motivated by discriminatory animus. *See, e.g.*, *Benzinger*, 2020 WL 1322478, at *10.

To establish a prima facie case of discrimination under the ADA, Plaintiff "must show by a preponderance of the evidence that: (1) her employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability." *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 71 (2d Cir. 2019). Likewise, to establish a prima facie case for failure to provide a reasonable accommodation, Plaintiff "must satisfy the first three factors, but for the fourth factor, [s]he must show by a preponderance of the evidence that [her] employer refused to make a reasonable accommodation." *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020). Verizon agrees it is subject to the ADA, but argues that Plaintiff fails to meet each of the other prongs necessary to establish a prima facie case.

7

Under the ADA, the term "disability" means: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). "For a plaintiff to establish that she has a disability under the statute's first subsection, she must (1) show that she suffers from a physical or mental impairment, (2) identify the activity claimed to be impaired and establish that it constitutes a major life activity, and (3) show that her impairment substantially limits the major life activity previously identified." *Jones v. New York City Transit Auth.*, No. 17-cv-6460 (AMD), 2020 WL 1550582, at *5 (E.D.N.Y. Mar. 31, 2020). Major life activities include "caring for oneself, performing manual tasks . . . , walking, standing, lifting, bending, speaking, breathing . . . , and working." *Vargas v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 16-cv-5733 (JPO), 2020 WL 2836824, at *6 (S.D.N.Y. June 1, 2020) (quoting 42 U.S.C. § 12102(2)(B)).

Here, Plaintiff fails to establish she has a disability under the ADA. For one thing, Plaintiff submits no evidence of her disability other than her own deposition testimony. That is, to say the least, problematic for Plaintiff, as "[c]ourts in this circuit have imposed a requirement that, for a plaintiff to survive summary-judgment, she must supply more than her own deposition testimony, even if accompanied by unsworn medical evidence." *Jones*, 2020 WL 1550582, at *6 (collecting cases). And Plaintiff's own deposition testimony is itself inconsistent as to the nature of her physical or mental impairment and the major life activity that her impairment substantially limits. Plaintiff testified that, as of August 9, 2016, she was unable to work because of her depression and post-traumatic stress disorder. (*See* Pl. Tr. 52:7.) Yet, while "working" is certainly a "major life activity" for the purposes of the ADA, Plaintiff also testified at her deposition that she owns and runs a "wellness consulting business," which she incorporated in 2016. (Def. 56.1 ¶ 21.) Plaintiff fails to offer any further

8

evidentiary support for her disability, and instead argues that it is "undisputed that [she] was a person with a disability" because Verizon provided Plaintiff with reasonable accommodations in the past. (Opp. at 9 (citing Def. 56.1 at ¶¶ 5-8).) Those accommodations, however, were provided in response to Plaintiff's back injury in 2001, and were not related to the depression and post-traumatic stress Plaintiff testified to in her deposition. Accordingly, Plaintiff has failed to establish she is disabled under the ADA.

Even if Plaintiff had a disability for the purposes of the ADA, she still fails to meet the "otherwise qualified" prong to establish a prima facie case of discrimination. An employee is "qualified" for a position "only if she can perform its essential functions." *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 98 (2d Cir. 2009). While "the term 'essential functions' is not defined by the ADA," it includes "the fundamental job duties of the employment position." *Id.* (quoting 29 C.F.R. § 1630.2(n)(1) (2012)). A plaintiff's "admission that she is unable to work" and "her failure to appear for work" render her unable to perform the essential functions of her job. *Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12-cv-925 (KPF), 2013 WL 6244158, at *17 (S.D.N.Y. Dec. 2, 2013). Even drawing all inferences in her favor, the record establishes that Plaintiff was not qualified to perform the essential functions of her job. Indeed, Plaintiff testified that, due to her post-traumatic stress disorder and depression, her doctors told her she could not return to work from August 2016 to December 2016, with or without accommodation. (Pl. Tr. at 52:7-12.) She further testified that at no time in either 2017 or 2018 did her doctors tell her she would be able to return to work full time. (*Id.* at 52:13-21.) That Plaintiff was not able to perform the essential work function of regular attendance at work is further supported by the fact that Verizon sent multiple letters to Plaintiff warning her that her unauthorized absences would lead to termination if she did not report to work or otherwise respond. (*See* Aug. 24,

9

2016 Letter; Sept. 7, 2016 Letter; Dec. 1, 2016 Letter; Dec. 16, 2016 Letter). Despite acknowledging receipt of these letters, Plaintiff neither returned to work nor communicated in any way with Verizon.

Plaintiff's only response is that "her doctor did not say that she could not work part-time" and that "she does not know [her doctors'] thoughts [regarding] her capability to work." (Opp. at 12.) This argument is both directly contradicted by Plaintiff's own deposition testimony, in which she states that her doctors considered her unable to return to work, and fails to offer any evidence whatsoever to rebut the fact that "Plaintiff's persistent absence from work, alone, precludes [her] from being considered qualified under the ADA." *Maysonet v. Valley Nat'l Bank*, No. 17-cv-3939 (RJS), 2019 WL 1368327, at *4 (S.D.N.Y. Mar. 25, 2019). Accordingly, Plaintiff has failed to meet the third prong required to establish a prima facie case of discrimination. *See Rios v. Dep't of Educ.*, 351 F. App'x 503, 505 (2d Cir. 2009) (affirming district court's decision that plaintiff could not establish "that she was 'otherwise qualified' within the meaning of the ADA because she could not perform the 'essential function' of regularly showing up to work").

Finally, Plaintiff has failed to demonstrate that she was fired because of her disability. To establish causation, Plaintiff must show "that [her] disability was the but-for cause of the adverse employment action." *McCrain v. Metro. Transp. Auth.*, No. 17-cv-2520 (RA), 2020 WL 1285634, at *13 (S.D.N.Y. Mar. 18, 2020). "A plaintiff may demonstrate circumstances giving rise to an inference of discrimination through evidence of overt discriminatory conduct or disparate treatment." *Santiago v. 1199 SEIU*, 18-cv-6711 (AMD), 2020 WL 4350048, at *4 (E.D.N.Y. July 29, 2020). Plaintiff argues that the fact that Verizon was on notice that Plaintiff suffered from asthma, chronic back pain, post-traumatic stress disorder, depression, and anxiety "is all that

10

is necessary for Plaintiff to make her claim of disparate treatment because of her disability and its connected claim of the termination of her employment." (Opp. at 9-10.) Not so. While demonstrating that an employer was on notice of an employee's disability is a necessary condition for establishing a prima facie case of discrimination, *see Jones*, 2020 WL 1550582, at *7, it is not, without more, sufficient to establish such a case. Here, Plaintiff—who, oddly, did not file a Rule 56.1 counterstatement and did not conduct any depositions in the course of discovery—fails to offer any evidence to support an inference that Verizon fired Plaintiff because of her disability. To the contrary, the record establishes that Verizon fired Plaintiff after she stopped showing up for work for months at a time and did not respond to any of the numerous follow-up letters Verizon sent to her. Accordingly, Plaintiff fails to demonstrate that she was terminated because of her disability.

Because Plaintiff has failed to demonstrate all required prongs of a prima facie case of discrimination, she also fails to establish a prima facie case for failure to provide a reasonable accommodation. *See Vargas*, 2020 WL 2836824, at *5. Crucially, there is no evidence before the court that Plaintiff could "with reasonable accommodation, . . . perform the essential functions of [her] job." *Maysonet*, 2019 WL 1368327, at *5; *see also Mazza v. Bratton*, 108 F. Supp. 2d 167, 175 (S.D.N.Y. 2000) ("A individual is not qualified for his position if he is unable to come to work."), *aff'd*, 9 F. App'x 36 (2d Cir. 2001).

Accordingly, Verizon's motion for summary judgment on Plaintiff's ADA claims is granted.

### B.  NYSHRL and NYCHRL Claims

Verizon also moves for summary judgment on Plaintiff's discrimination and failure to accommodate claims under both the NYSHRL and the NYCHRL.

First, "New York State disability discrimination claims are governed by the same legal standards as federal ADA claims." *Jones*, 2020 WL 1550582, at *9 (collecting cases). Accordingly, Verizon's motion for summary judgment on Plaintiff's NYSHRL discrimination claim is granted for the reasons stated above. And while "courts must analyze NYCHRL claims separately and independently from any federal and state law claims, a plaintiff bringing a claim under the NYCHRL must still show that the conduct complained of is caused by a discriminatory motive." *Id.*; *see also Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 75-76 (2d Cir. 2015). As discussed above, Plaintiff has failed to demonstrate that Verizon's decision to fire her was influenced in any way by discrimination. Therefore, Verizon's motion for summary judgment on Plaintiff's NYCHRL discrimination claim must also be granted. Finally, "[c]ourts apply the same standard for failure to accommodate cases under the ADA, . . . NYSHRL, and NYCHRL." *Lawtone-Bowles v. City of New York*, 17-cv-8024 (WHP), 2019 WL 652593, at *6 (S.D.N.Y. Feb. 15, 2019). Accordingly, Verizon's motion for summary judgment on Plaintiff's NYSHRL and NYCHRL failure to accommodate claims is also granted.

## IV. CONCLUSION

For the reasons stated above, Defendant's (Dkt. 28) motion for summary judgment is granted with prejudice. The Clerk of the Court is respectfully DIRECTED to enter judgment for Defendant and close the case.

SO ORDERED.

Dated:   Brooklyn, New York
         August 27, 2020

                                          /s/ Nicholas G. Garaufis
                                         NICHOLAS G. GARAUFIS
                                         United States District Judge